UNITED STATES, Appellee

v

LLOYD W. COX, Airman Second Class,
U. S. Air Force, Appellant

12 USCMA 168, 30 CMR 168

No. 14,481

Decided February 3, 1961

Colonel James L. Kilgore and Lieutenant Colonel Philip J. Williamson were on the brief for Appellant, Accused.

Lieutenant Colonel Simpson M. Woolf argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel Merlin W. Baker.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A board of review affirmed the accused's conviction by a special court-martial of sodomy, in violation of Article 125 of the Uniform Code of Military Justice, 10 USC § 925. In accordance with the provisions of Article 67 (b)(2) of the Uniform Code, 10 USC § 867, The Judge Advocate General of the Air Force certified the case to this Court to review the following issue: "May a rehearing on both findings and sentence be ordered before a special court-martial where the original hearing was before a general court-martial?"

As the certified question indicates, the accused was originally tried by a general court-martial. He was found guilty and sentenced to a bad-conduct discharge, reduction in grade, forfeiture of all pay and allowances, and confinement at hard labor for six months. The convening authority set aside the findings of guilty and ordered a rehearing because of improper cross-examination of the accused by trial counsel. However, since the sentence adjudged by the general court was within the jurisdictional limits of a special court-martial, the convening authority "deemed [it] appropriate" that the rehearing be held before a

168

special court-martial. In due course the charge was forwarded to a special court-martial for trial.

Reversal of a conviction by appellate authority and the direction of a rehearing of the case generally leaves the proceedings in the same position as before trial. Spriggs v United States, 225 F2d 865 (CA 9th Cir) (1955); Booth v United States, 154 Fed 836 (CA 2d Cir) (1907); District of Columbia v Huffman, 42 Atl 2d 502 (DC Mun App); Odlum v Duffy, 35 Cal 2d 562, 219 P2d 785. There are exceptions to the rule. For example, the court-martial before which a rehearing is held cannot be composed of "members of the court-martial which first heard the case"; and if again convicted, the accused cannot be subjected to punishment "in excess of or more severe than the original sentence" imposed for the same offenses of which he was previously convicted. Article 63(b), supra; United States v Kelley, 5 USCMA 259, 17 CMR 259. Recently, we held that a case cannot be divided in two parts, with one part tried before a general court-martial and the other before a special court-martial. United States v Martinez, 11 USCMA 224, 228, 29 CMR 40. Also, of course, proceedings at the rehearing cannot be inconsistent with the mandate of the appellate court. However, except as limited by law and the requirements of sound judicial practice, any action that could have been taken before the first trial can be taken as part of the rehearing procedure.

The general rule has been applied by judicial tribunals in various situations. In District of Columbia v Huffman, supra, the Municipal Court of Appeals for the District of Columbia commented on the right of the prosecutor to enter a *nolle prosequi* on a rehearing. The court noted that he possessed the same power over a case directed to be reheard as he had before the original trial of the cause. In part, it said (page 503):

"We know from practical experience that a prosecutor is vested with important discretionary power—commensurate with the responsibilities of his office, to determine whether to proceed with a prosecution already begun, or to enter a nolle prosequi. The same is true of a retrial after reversal. Thus in many cases a reversal ends a prosecution even though the appellate court has not expressly ordered it. This is so because the prosecutor may feel that a defendant has already been punished enough, or because the nature of the charge is such as not to warrant a second prosecution, or because he feels he cannot secure sufficient evidence to support a conviction, or for other reasons which appeal to his sense of justice as a public servant."

In People v Dormann, 180 Misc 160, 44 NYS2d 266, the defendant's conviction was reversed on appeal. On remand of the case, the defendant moved to transfer the proceedings from the County Court to the Supreme Court on the ground that he could not get a fair trial in the County Court. The motion was granted. In Booth v United States, supra, the Government was allowed to consolidate subsequent indictments against the accused with those as to which a rehearing had been directed, and to try all charges at the rehearing.

Two cases quite similar to the one before us are Ex parte Vickery, 51 Fla 141, 40 So 77, and United States v Kincaid, 17 CMR 523. In *Vickery* the defendant was tried for murder and convicted of manslaughter in the Circuit Court. The conviction was reversed on appeal. Thereupon, the prosecuting attorney filed an information charging the defendant with manslaughter, and the case was transferred from the Circuit Court to the County Court, which had jurisdiction over noncapital criminal offenses. Later the defendant challenged the validity of the transfer. Overruling the challenge, the Florida Supreme Court said:

". . . when the verdict of manslaughter was reversed the cause stood in the circuit court precisely

as if the grand jury had brought in an indictment for manslaughter; and it cannot be questioned that in such event it is proper and jurisdictional for the cause to be tried in the criminal court, if one exists in the county, upon an information filed therein."

In United States v Kincaid, 17 CMR 523, the accused was first tried by a special court-martial. The conviction was set aside on review. In the meantime, the accused committed other offenses. The later offenses were joined with the earlier charges and all charges were referred for trial before a general court-martial. Sustaining the validity of the proceedings, a Navy board of review said:

"The question remaining is whether it was proper in this case to have the rehearing before a general court-martial when the original trial was a special court-martial. In this regard the Code itself and the Manual for Courts-Martial (1951) are silent and a diligent search has failed to reveal any previous determination. We are, then, confronted with an interpretation of the intent of the framers of the Code as to any unwritten limitations on a rehearing.

⋅       ⋅       ⋅       ⋅       ⋅

"Appellate defense counsel argues that the convening authority could not divest the original court of jurisdiction but, in effect, this was accomplished by the provision in the Code requiring new members. Furthermore, the jurisdiction of a general court-martial is more comprehensive than that of a special court-martial, i.e., for any offense triable by special court-martial there is a concurrent jurisdiction by a general court-martial and which forum is to hear the case lies within the discretion of the convening authority."

No provision in the Uniform Code or in the Manual for Courts-Martial, and no requirement of sound judicial procedure, takes the present case out of the operation of the general rule that re-

versal of a conviction leaves the cause as though there had been no trial. Since before trial a convening authority has power to refer the charges to an appropriate court, whether it be summary, special, or general, he has the same discretion in that regard when the case is before him for consideration as to a rehearing. District of Columbia v Huffman, supra. Accordingly, the certified question is answered in the affirmative.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

I dissent.

Conceding the validity in their sphere of the civil authorities cited by the Chief Judge, I believe they have no application to a determination of the issue whether a case originally tried by general court-martial may thereafter be reheard before a special court-martial. In my opinion, resolution of this question depends solely upon the intent of Congress in enacting Uniform Code of Military Justice, Article 63, 10 USC § 863. The legislative history of that statute leads inevitably to the conclusion that a rehearing must be conducted before a tribunal of the same rank as the court-martial which originally tried the cause.

Code, supra, Article 63, provides pertinently:

"(a) If the convening authority disapproves the findings and sentence of a court-martial he may, except where there is lack of sufficient evidence in the record to support the findings, order a rehearing. In such a case he shall state the reasons for disapproval. If he disapproves the findings and sentence and does not order a rehearing, he shall dismiss the charges.

"(b) Each rehearing shall take place before a court-martial composed of members not members of the court-martial which first heard the case. Upon a rehearing the accused may not be tried for any of-

fense of which he was found not guilty by the first court-martial, and no sentence in excess of or more severe than the original sentence may be imposed, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings, or unless the sentence prescribed for the offense is mandatory."

Code, supra, Article 66, 10 USC § 866, and Article 67, 10 USC § 867, also authorize boards of review and this Court to order rehearings in the event prejudicial error is discovered in the record.

The key to the meaning of the cited statutes is the intended definition of the term "rehearing." Reference to the legislative background of the Articles in question makes it crystal clear that Congress adopted the military understanding that a rehearing was but "a continuation of the former proceeding," subject to the requirement that different members compose the panel hearing the case. Hearings before House Armed Services Committee on HR 2498, 81st Congress, 1st Session, page 1180; House Report No. 491, 81st Congress, 1st Session, page 30; Senate Report No. 486, 81st Congress, 1st Session, page 26. Historically, this understanding of the meaning of "rehearing" seems to have grown from the automatic appellate review of records of trial and the application of the prohibition against twice placing an individual in jeopardy. In civil jurisdictions, of course, the defendant normally waives a claim of jeopardy by appealing and requesting another trial. In military law, however, his record of trial is automatically reviewed. Consequently, any further hearing was regarded as a mere continuation of the former trial in order to secure a means of correcting error without the necessity of implying the accused's consent. See, generally, Hearings before Senate Armed Services Committee, on S. 857 and HR 4080, 81st Congress, 1st Session, pages 321, et sequitur.

The Uniform Code elsewhere recognizes that a rehearing is no more than a continuation of the former proceeding for, it also provides that jeopardy shall not attach in a court-martial "until the finding of guilty has become final after review of the case has been fully completed." Code, supra, Article 44, 10 USC § 844. This obviously contemplates that a trial by court-martial is a unitary proceeding which commences with the initial hearing on the merits, proceeds through appellate channels, and ends either with dismissal of the charges or repetition of the trial and review procedures. Indeed, the Chief Judge has heretofore so construed the Code. United States v Padilla, 1 USCMA 603, 5 CMR 31. There, he stated, at pages 613–614:

". . . It is quite clear, from the provisions of the Code and the Manual and from the legislative history of the Code—all of which are cited by the majority—that there is a legal and practical difference between a 'rehearing' ordered for procedural error, and 'another trial' ordered for jurisdictional defect in the original proceedings. . . .

"I quite agree that legal effect can properly be given to the result of a rehearing ordered for fancied but nonexistent procedural error. *But this only because, in the language of the Congressional draftsmen of the Code, a rehearing is a 'continuation of the former proceeding.' . . . The rehearing . . . [constitutes], in legal effect, a continuation of the first trial, . . .*" [Emphasis supplied.]

In United States v Martinez, 11 USCMA 224, 29 CMR 40, we were faced with substantially the same question as is now before us. There, accused's trial was initially held before a general court-martial. Detecting the presence of error which did not affect the findings, the convening authority ordered a rehearing before a special court-martial on *the sentence alone.* We held the subsequent proceedings to be a nullity, pointing out that the two types of courts-martial did not possess coordinate jurisdiction. To the same effect, see Ex parte Trombley, 78 Cal App 2d 528, 178 P2d 510 (1947), affirmed 31 Cal 2d 801, 193 P2d 734

(1948), and Henry L. Lang Co. v McGarry, 106 NJL 457, 150 Atl 689 (1930). While we were there concerned with a splitting of the case between a general and a special court-martial, implicit in our holding was the conclusion that it would be equally improper to hold a complete rehearing before a lesser tribunal. Indeed, the dissenting judge in that case expressly referred to such a result. United States v Martinez, supra, at page 234. In short, we recognized that a trial by court-martial and a rehearing constitute but one proceeding separated only by intervening appellate action.

Upon this basis, it is difficult to perceive how a cause originally heard before a military tribunal of general jurisdiction may be heard, following reversive action, by a court-martial whose powers are strictly limited and whose entire composition is different. And as we said in United States v Martinez, supra, at page 228:

". . . [I]t is obvious that the accused is deprived of substantial rights by such a division in the trial of his case. While he may possibly benefit in some cases from the limited sentencing powers of the lesser tribunal, he may be denied the services of qualified counsel and is always required to do without the advantages inherent in the services of a trained law officer."

Turning to the rationale of the principal opinion, it is at once apparent where its reasoning goes astray. True it is that the authorities cited have held that reversal of a case on appeal generally leaves the proceedings in the same position as before trial.

Spriggs v United States, 225 F2d 865 (CA 9th Cir) (1955); Booth v United States, 154 Fed 836 (CA 2d Cir) (1907); District of Columbia v Huffman, 42 Atl 2d 502 (DC Mun App) (1945). These cases, however, deal with the effect of dismissal of charges by the United States District Attorney and the conduct of " 'a new trial' " ordered by the appellate courts. As noted above, we are here dealing with the effect of a *rehearing* rather than a new trial, and the distinction between the two terms is material. United States v Padilla, supra. Moreover, none of the cases cited involved a change in the nature of the tribunal which was to hear the cause, and, in my opinion, the Circuit Courts of Appeals involved might have taken quite a different view had the trial judge decided to ignore their mandate and refer the indictments for trial before a United States Commissioner.

In my view, therefore, it was improper to order a rehearing of accused's case before a special court-martial after his original trial had been held before a general court-martial. Code, supra, Article 63, was intended by Congress to authorize rehearings only before tribunals of a dignity equal to that of the forum which initially heard the case. United States v Padilla, supra; United States v Martinez, supra. Any other interpretation of the statute simply renders meaningless the legislative purpose to adopt the long-held military concept that a rehearing is but a continuation of the former proceedings. As I cannot disregard so easily the Congressional mandate, I am unable to concur in my brothers' views.